IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| PACIFIC GAS AND ELECTRIC COMPANY, | |
| Petitioner, | Case No. 24-1074 |
| v. | |
| FEDERAL ENERGY REGULATORY COMMISSION, | |
| Respondent. | |

## PETITION FOR REVIEW

Pursuant to section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b),
Rule 15(a) of the Federal Rules of Appellate Procedure, and Circuit Rule 15 of the
Rules of this Court, Pacific Gas and Electric Company ("PG&E") submits this
petition for review of the following orders of the Federal Energy Regulatory
Commission ("FERC" or the "Commission") in Docket No. ER24-219:

- *Pacific Gas and Electric Company*, Order Denying Waiver Request,
  185 FERC ¶ 61,219 (Dec. 22, 2023) ("December 2023 Order");

- *Pacific Gas and Electric Company*, Notice of Denial of Rehearing by
  Operation of Law and Providing for Further Consideration, 186 FERC
  ¶ 62,080 (Feb. 22, 2024) ("Notice of Denial").

1

A copy of the December 2023 Order is attached as Exhibit A to this petition. A copy of the Notice of Denial is attached as Exhibit B to this petition.

PG&E timely requested rehearing of the December 2023 Order on January 22, 2024. (*See* Ex. B at 1 ("Rehearing has been timely requested of the Commission's order issued on December 22, 2023, in this proceeding.").) However, FERC did not issue a substantive order on PG&E's rehearing request within thirty days. *See* 16 U.S.C. § 825*l*(a) ("Unless the Commission acts upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied."). FERC instead issued the Notice of Denial, which noted that PG&E's rehearing request will be addressed in a future order. The Commission has not yet issued that order.

PG&E seeks review of these orders on the grounds that FERC's rulings are arbitrary, capricious, and an abuse of discretion within the meaning of the Administrative Procedure Act, 5 U.S.C. §§ 701–706; violate federal law, including the Federal Power Act; and are otherwise not in accordance with law.

Venue is proper in this Court pursuant to Federal Power Act section 313(b), 16 U.S.C. § 825*l*(b).

Dated:  March 28, 2024

Respectfully submitted,

*/s/ Suedeen G. Kelly*
Suedeen G. Kelly
JENNER & BLOCK LLP
1099 New York Ave., NW, Suite 900
Washington, DC 20001
Telephone: (202) 639-6055
skelly@jenner.com

Charles Middlekauff
Pacific Gas and Electric Company
P.O. Box 1018
Oakland, CA 94604-1018
(650) 766-9147
charles.middlekauff@pge.com

*Counsel for Petitioner*
*Pacific Gas and Electric Company*

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

PACIFIC GAS AND ELECTRIC
COMPANY,

                    Petitioner,                          Case No. 24-1074

        v.

FEDERAL ENERGY REGULATORY
COMMISSION,

                    Respondent.

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Rule
26.1 of this Court, PG&E submits the following disclosure statement.

PG&E is a subsidiary of PG&E Corporation, a publicly held corporation
that has a 10 percent or greater ownership interest in PG&E.  PG&E is a
corporation organized and existing under the laws of the State of California.
PG&E's business address is P.O. Box 1018, Oakland, CA 94604.  PG&E is a
public utility operating in northern and central California.  PG&E is engaged
primarily in the businesses of electricity and natural gas distribution; electricity
generation, procurement, and transmission; and natural gas procurement,
transportation, and storage.

1

Dated:  March 28, 2024                    Respectfully submitted,


                                          /s/ *Suedeen G. Kelly*
                                          Suedeen G. Kelly
                                          JENNER & BLOCK LLP
                                          1099 New York Ave., NW, Suite 900
                                          Washington, DC 20001
                                          Telephone: (202) 639-6055
                                          skelly@jenner.com

                                          Charles Middlekauff
                                          Pacific Gas and Electric Company
                                          P.O. Box 1018
                                          Oakland, CA 94604-1018
                                          (650) 766-9147
                                          charles.middlekauff@pge.com

                                          *Counsel for Petitioner*
                                          *Pacific Gas and Electric Company*

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 15(c), I hereby certify that on this 28th day of March 2024, I have caused the foregoing Petition for Review and Corporate Disclosure Statement of Petitioner to be served upon the Office of the Solicitor of the Federal Energy Regulatory Commission at the following address:

> Robert H. Solomon, Solicitor
> Federal Energy Regulatory Commission
> 888 First Street, N.E.
> Washington, D.C. 20426
> robert.solomon@ferc.gov

I hereby further certify that I have served a copy of the foregoing Petition for Review and Corporate Disclosure Statement of Petitioner on all parties to the proceedings before the Commission under Docket No. ER24-219 as shown on the attached service list.

Once received from the Court, a stamped copy of this Petition will be e-filed and served on the respondent, pursuant to 18 C.F.R. § 385.2012, at the following address:

> Debbie-Anne Reese
> Acting Secretary
> Federal Energy Regulatory Commission
> 888 First Street, N.E.
> Washington, D.C. 20426

> */s/ Suedeen G. Kelly*
> Suedeen G. Kelly

1

# EXHIBIT A

185 FERC ¶ 61,219
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Willie L. Phillips, Acting Chairman;
Allison Clements, and Mark C. Christie.

Pacific Gas and Electric Company                    Docket No. ER24-219-000

ORDER DENYING WAIVER REQUEST

(Issued December 22, 2023)

1.      On October 24, 2023, pursuant to Rules 207(a)(5) and 212 of the Commission's
Rules of Practice and Procedure,[1] Pacific Gas and Electric Company (PG&E) filed a
request for waiver of its currently effective formula rate (TO20 Formula Rate) and
associated protocols (TO20 Formula Rate Protocols) under its Transmission Owner Tariff
(TO Tariff) to allow PG&E to exclude certain cost inputs to the cost of long-term debt for
rate years 2024 and 2025.[2]  As discussed below, we deny PG&E's waiver request.

I.      **Background**

2.      PG&E states that the TO20 Formula Rate, which became effective on May 1,
2019, expires at the end of 2023.  PG&E explains that, in the TO20 proceeding, filed
under Docket No. ER19-13-000, a partial settlement was approved on August 17, 2020,
and the remaining issues were settled on December 30, 2020.  Pursuant to that settlement,
PG&E provided a draft annual update for Rate Year 2024 using the TO20 Formula Rate.[3]
Additionally, PG&E states that the settlement requires a revised or replacement rate to
become effective on January 1, 2024.  PG&E states that it filed revisions to its TO Tariff
to revise its formula rate on October 13, 2023 in Docket No. ER24-96-000 (TO21
Formula Rate filing).[4]

---

[1] 18 C.F.R. §§ 385.207, 385.212 (2022).

[2] TO Tariff, PG&E FERC Electric Tariff Volume No. 5, app. VIII (Formula Rate),
attach. 1 (Protocols) (1.1.0); *id.* attach. 2 (Model) (7.0.0).

[3] Waiver Request at 5 (citing *Pac. Gas & Elec. Co.*, 172 FERC ¶ 61,142 (2020);
*Pac. Gas & Elec. Co.*, 173 FERC ¶ 61,281 (2020)).

[4] *Id.* at 4-5.  We note that this proceeding is currently pending before the
Commission.

Document Accession #: 20231222-3044          Filed Date: 12/22/2023

3.      PG&E explains that the TO20 Formula Rate determines PG&E's base
transmission revenue requirement (TRR) for the rate year, in addition to access charges,
transmission rates, and a true-up TRR.  The TO20 Formula Rate consists of
two components:  (1) the Model; and (2) the Protocols.  The Model consists of individual
schedules that calculate the TRR and transmission rates, which are comprised of the
wholesale base TRR, plus a retail tax adjustment, plus retail uncollectible expense.  The
Protocols describe the terms and operation of the Formula Rate.  PG&E explains that the
Formula Rate operates using three calendar periods:  the prior year, which is the most
recent calendar year prior to the filing year; the filing year, which is the year when PG&E
files its annual update; and the rate year, which is the year in which the rates will be
effective and is the year immediately following the filing year.  PG&E explains that the
prior year TRR is based on the actual cost of service from the prior year and includes cost
inputs from PG&E's FERC Form 1.  PG&E states that the wholesale base TRR is equal
to the sum of the prior year TRR, the incremental TRR, and an annual true-up
adjustment.  PG&E explains that the annual true-up adjustment is the difference between
the true-up TRR and the actual transmission revenues received during that same period,
plus interest, and that the incremental TRR represents additional costs that PG&E
estimates it will incur while the base TRR is in effect.[5]

4.      PG&E states that the TO20 Formula Rate Protocols require PG&E to submit an
annual update informational filing of its Base TRR by December 1 for the rates to
become effective January 1 of the following year.  PG&E states that, pursuant to
section 4.6.2 of the TO20 Formula Rate Protocols, the annual update is not considered a
modification of the Formula Rate or a rate change filing under section 205 of the
Federal Power Act.[6]

5.      PG&E explains that a utility's revenue requirement ensures that it can recover
operating expenses incurred, plus a reasonable return on its investments in rate base.
PG&E states that the return on investment is calculated by multiplying the utility's total
investments in capital assets by the weighted average cost of capital (WACC).
According to PG&E, the WACC is determined by the average cost of long-term debt and
the average cost of equity, each weighted by the total capital under PG&E's capital
structure.  PG&E states that the cost of long-term debt represents the interest paid on the
issuance of debt securities divided by the total amount of debt.[7]

---

[5] *Id.* at 5-7.

[6] *Id.* at 7; 16 U.S.C. § 824d.

[7] Waiver Request at 7-8.

### A.     Relevant FERC Form 1 Cost Inputs

#### 1.     Securitized Debt Booked in Account 223 and Associated Amortization of Issuance Costs Booked in Account 428

6.     PG&E explains that FERC Account 223 (Long-Term Debt – Advances from Associated Companies) records long-term debt from associated companies and Account 428 (Amortization of Debt Discount and Expense) records the amortization of debt discount and expense. PG&E states that, under its TO20 Formula Rate Model, the cost of long-term debt calculation includes debt booked in Account 223, and the amortization booked in Account 428 is included as a component of total interest used to determine the return on capital reflected in the true-up TRR. PG&E asserts that because the Formula Rate only addresses transmission-related costs and transmission rate base, the cost of long-term debt should not include debt that does not contribute to the transmission rate base or the associated cost for securitizations unrelated to transmission rate base.[8]

7.     PG&E states that it seeks to exclude two categories of securitized debt from the cost of long-term debt calculation in the Formula Rate: (1) debt issued pursuant to Assembly Bill (AB) 1054; and (2) debt issued pursuant to Senate Bill (SB) 901.[9] PG&E states that the Model did not anticipate including intercompany debts not related to transmission investments, and when PG&E began issuing such debts at the end of 2021, the balances in Account 223 significantly shifted. PG&E maintains that the lower annual true-up adjustment and TRR calculation do not accurately represent PG&E's true cost of debt to fund the transmission rate base. Specifically, PG&E states that the sudden and significant increase in the Account 223 balance erroneously lowers the calculation of the cost of long-term debt from 3.85% to 3.39%, which results in a $27.9 million decrease in the annual true-up adjustment for rate year 2024.[10]

8.     PG&E explains that in June 2021, it obtained approval from the California Public Utilities Commission (CPUC) to issue wildfire hardening recovery bonds (Recovery Bonds) to finance capital costs related to fire risk mitigation for its distribution

---

[8] *Id.* at 9.

[9] According to PG&E, both laws allow the use of a dedicated rate component in a CPUC-authorized debt recovery mechanism to provide access to securitized financing. *Id.* at 10.

[10] *Id.* at 10-11.

facilities.[11] PG&E states that subsequently, it sold these rights to receive revenues from the non-bypassable wildfire hardening fixed recovery charge (Recovery Property) to PG&E Recovery Funding LLC (a wholly owned subsidiary), which, in turn, issued recovery bonds secured by the Recovery Property. PG&E states that between 2021 and 2022, PG&E Recovery Funding LLC issued $1.84 billion of recovery bonds, which it recorded to Account 223. However, PG&E maintains that the proceeds from the securitized debt were used to fund distribution infrastructure, not transmission infrastructure, and thus are not included in PG&E's transmission rate base.[12]

9.      PG&E explains that pursuant to SB 901, the CPUC allowed PG&E to issue rate-neutral securitized bonds for funding costs associated with catastrophic wildfires and costs to establish the Customer Credit Trust to offset charges on customer bills.[13] PG&E states that, as a result, it was able to retire six billion dollars in temporary utility debt to pay wildfire claims costs after emerging from bankruptcy and to fund $1.35 billion in deferred payments to fire victims. PG&E explains that it then issued $7.5 billion of debt through an affiliate, PG&E Wildfire Recovery Funding LLC, to complete its rate-neutral securitization, but proceeds from the $7.5 billion were used to pay wildfire claims and did not fund investments in any transmission infrastructure included in the rate base.[14]

10.     PG&E states that inputs to the true-up TRR calculation are based on FERC Form 1 data, and company records, if necessary. PG&E adds that because all-intercompany debt is included in the true-up TRR cost of long-term debt calculation, strictly following the Formula Rate Model would result in the inclusion of the securitized debt in Account 223 in the annual true-up adjustment. Therefore, PG&E requests waiver of the Formula Rate to exclude $9.1 billion of securitized debt from Schedule 5-CostofCap-2, noting that the securitized debt was not used to fund investment in the transmission rate base and that the CPUC provided for a separate fixed recovery mechanism which allows PG&E to exclude the AB 1054 securitized debt and the rate-neutral securitized debt from its rate making capital structure within its California-jurisdictional rates.[15]

---

[11] *Id.* at 12 (citing CPUC Decision No. 21-06-030, 2021 WL 2709001 (June 24, 2021)).

[12] *Id.*

[13] *Id.* at 12-13 (citing CPUC Decision No. 21-04-030, 2021 WL 1688449 (Apr. 22, 2021); CPUC Decision No. 21-05-015, 2021 WL 2011569 (May 6, 2021)).

[14] *Id.* at 13.

[15] *Id.* at 13-14.

### 2. Underwriting Fees and Expenses Recorded Under Accounts 181 and 428

11.     PG&E states that the Commission's accounting rules require unamortized expenses related to the issuance of debt security to be booked in Account 181 (Unamortized Debt Expense), including underwriting fees associated with the issuance of long-term debt. PG&E states that amounts recorded in Account 181 are amortized over the life of the associated debt, and that the amortization must be charged to Account 428. Therefore, PG&E explains, the Formula Rate Model includes all underwriting fees related to the issuance of long-term debt because it is based on FERC Form 1 data. PG&E states that it represented in the CPUC proceeding that it will not seek recovery of underwriting fees related to long-term debt issued for the upfront contribution to the California Wildfire Fund. Therefore, PG&E seeks to exclude these costs from the calculation of the cost of long-term debt, which, it asserts, is consistent with its Plan of Reorganization approved by the CPUC.[16] PG&E also notes that Account 428 includes expenses related to the issuances of the AB 1054 securitized debt and the rate-neutral securitized debt, which it maintains should also be excluded from Account 428.

## II. Waiver Request

12.     PG&E requests waiver to exclude the following cost inputs, as detailed above, from long-term debt in its Formula Rate Model for rate years 2024 and 2025: (1) securitized debt issued in 2021 and 2022 in Account 223 and the amortization of costs related to that securitized debt in Account 428; and (2) underwriting fees associated with long-term debt issuances under Accounts 181 and 428. PG&E contends that its waiver request satisfies the Commission's criteria for granting waiver.[17]

13.     First, PG&E argues that it has acted in good faith because it seeks to ensure that its rate reflects only appropriately recoverable costs. PG&E states that it identified the cost input issues in the 2024 annual update process and promptly sought resolution. PG&E explains that when it realized that a waiver request was necessary, it notified and engaged with stakeholders, conducting two meetings and a presentation outlining the waiver request. PG&E explains that it seeks to exclude securitized debt from its transmission rate base to ensure that the cost of long-term debt includes only debt amounts funding capital investments in PG&E's transmission rate base. PG&E explains that the AB 1054 and rate-neutral securitized debts were incurred to fund wildfire-related expenses and distribution infrastructure investments, and that the CPUC authorized PG&E to exclude all securitized debts from its California rate structure because PG&E's affiliates are

---

[16] *Id.* at 15 (citing CPUC Decision No. 20-05-053, 2020 WL 6060324 (May 28, 2020)).

[17] *Id.* at 16.

legally obligated to repay securitized debt through fixed recovery charge revenues.
PG&E asserts that the securitized debt does not accurately reflect the long-term
transmission-related debt, and its inclusion in the transmission rate base runs counter to
the Commission's principle that a rate of return be "representative of the types and
relative amounts of capital invested" in the rate base.[18]

14.    Second, PG&E asserts that its waiver request is limited in scope, as it would be
limited to specific, inappropriate cost inputs to the Formula Rate for the 2024 and 2025
rate years.  PG&E explains that, apart from the exclusion of specific costs incurred in
2022 and 2023, its Formula Rate and calculation methodology remain unchanged.  PG&E
argues that, like *Morongo Transmission LLC*, PG&E's request is limited in scope because
it affects only two schedules in the formula for limited rate years.[19]  Further, PG&E states
that its pending TO21 filing addresses the issues raised in this waiver request on a going
forward basis.[20]

15.    Third, PG&E argues that its waiver request will address the concrete problem of
including securitized debt and underwriting costs, which conflicts with CPUC
proceedings and California law.  PG&E explains that, pursuant to AB 1054, rate-neutral
securitized debts were created to address wildfire impacts and not to fund infrastructure
to provide transmission service, and asserts that increasing the total debt by $9.1 billion
would artificially suppress the true cost of debt for ratemaking purposes.[21]  PG&E
contends that the Commission has granted waiver of transmission formula rate cost inputs
where absence of waiver would result in an anomalous outcome.[22]  Further, PG&E
argues that the Commission has also granted waiver of a transmission formula rate to

---

[18] *Id.* at 17 (citing *El Paso Nat. Gas Co. LLC*, 152 FERC ¶ 61,039, at P 138
(2015)).

[19] *Id.* at 18-19 (citing *Morongo Transmission LLC*, 183 FERC ¶ 61,070, at P 22
(2023) (*Morongo Transmission*)).

[20] *Id*. at 19 (citing PG&E's Transmission Owner Rate Case TO21 Formula Rate
Filing, Docket No. ER24-96-000 (filed Oct. 13, 2023)).

[21] *Id.* at 19-20.

[22] *Id.* at 20 (citing *Morongo Transmission*, 183 FERC ¶ 61,070 at P 22 (granting a
formula rate waiver to "eliminate the impact of the anomalous spike in costs on future
revenue requirement calculations.")); *S. Cal. Edison Co*., 173 FERC ¶ 61,128, at P 18
(2020) (*SoCal Edison*) (granting a formula rate waiver to allow the utility to "reflect the
exceptional impacts arising from the COVID-19 pandemic.")).

resolve a utility's inability to accurately reflect costs under the effective rate model.[23]
PG&E states that inclusion of the underwriting costs would conflict with its commitment
to the CPUC in the Plan of Reorganization proceeding.[24]

16.    Fourth, PG&E asserts that its waiver request will not cause undesirable
consequences or harm.  On the contrary, PG&E claims that, absent waiver, PG&E's
"grossly inaccurate" revenue requirement would result in undesirable consequences, such
as an inaccurate cost of long-term debt that it agreed not to recover from transmission
customers.[25]  PG&E states that excluding securitized debt from Account 223 will ensure
that rates remain "neutral" for its transmission customers, meaning that PG&E will not be
requiring those customers to pay for the cost of non-transmission investments or
misrepresenting the true cost of debt to fund its rate base.[26]  PG&E contends that the
Commission has previously granted waiver when a cost item would have distorted the
true cost of providing service.[27]  PG&E argues that excluding securitized debt and
amortization fees will ensure the appropriate application of cost causation principles.[28]

## III.    Notice and Responsive Pleadings

17.    Notice of PG&E's filing was published in the *Federal Register*,
88 Fed. Reg. 75,583 (Nov. 3, 2023), with interventions and protests due on or before
November 14, 2023.  CPUC filed a notice of intervention.  Cities of:  Anaheim, Azusa,
Banning, Colton, Pasadena, and Riverside, California; City of Santa Clara, California;
Modesto Irrigation District; and State Water Contractors filed timely motions to

---

[23] *Id.* at 21 (citing *The Narragansett Elec. Co.*, 185 FERC ¶ 61,004, at P 17 (2023)
(*Narragansett*) (granting the formula rate waiver to permit the use of an interim
worksheet to address the utility's "inability to include its costs, revenues, and load in the
currently effective [model].")).

[24] *Id.* at 15 (citing CPUC Decision No. 20-05-053, 2020 WL 6060324 (May 28,
2020)).

[25] *Id.* at 21-22 (citing *Narragansett*, 185 FERC ¶ 61,004 at P 18).

[26] *Id.* at 22-23.

[27] *Id.* at 23 (citing *Puget Sound Energy, Inc.*, 165 FERC ¶ 61,209, at P 22 (2018)
(granting formula rate waiver to exclude property taxes associated with non-transmission
assets because inclusion in the rate "[did] not reasonably reflect the cost of providing
transmission service and could distort the incentive to use transmission service
efficiently") (*Puget*)).

[28] *Id.* at 23-24.

intervene.  California Department of Water Resources State Water Project (DWR) and Transmission Agency of Northern California (TANC) filed timely motions to intervene and protests.  Northern California Power Agency filed a timely motion to intervene and adoption of the position of TANC.  On November 22, 2023, PG&E filed an answer to protests.

## A.   **Protests**

### 1.   **DWR**

18.     DWR asserts that PG&E's waiver request contradicts PG&E's agreement in the TO20 Settlement Agreement to "use the long-term debt and interest costs reflected in the FERC Form 1 for the Prior Year."[29]  DWR argues that the TO20 Settlement Agreement thoroughly resolved all issues, including the treatment of PG&E's securitized debt issuances, and that PG&E explicitly agreed to calculate its *actual* cost of debt using unadjusted values from the FERC Form 1.[30]  DWR asserts that PG&E should have negotiated to exclude securitized debt from its calculation of long-term debt cost in the TO20 Formula Rate proceeding, and requesting waiver here is an unauthorized attempt to renegotiate the TO20 Settlement Agreement.[31]

19.     DWR also argues that PG&E's request does not pass the Commission's four-part waiver test.  As an initial matter, DWR iterates that PG&E cannot claim that it did not anticipate its securitized debt issuances because it also sought to modify the TO20 formula to exclude the effects of securitized debt on the capital structure, and therefore PG&E's request does not meet the standard of an unforeseeable change.[32]  DWR contends that PG&E's waiver request is not limited in scope because it affects the Formula Rate true-up rather than a forecasted value, making it inconsistent with precedent where waivers were granted for forecasted values being trued-up in future years.[33]  Additionally, DWR argues that instead of resolving a concrete problem, PG&E's

---

[29] DWR Protest at 4 (citing PG&E's Offer of Settlement and Stipulation § 4.7, Docket No. ER19-13-003 (Oct. 15, 2020)).

[30] *Id.* at 4-6.

[31] *Id.* at 7 (citing *Cent. Vt. Pub. Serv. Corp.*, 123 FERC ¶ 61,128 (2008); *N.C. Elec. Membership Corp. v. Duke Energy Progress LLC*, 166 FERC ¶ 61,026, P 44 (2019)).

[32] *Id.* at 8-10 (citing *SoCal Edison*, 173 FERC ¶ 61,128 at P 15).

[33] *Id.* at 10-11 (citing *SoCal Edison*, 173 FERC ¶ 61,128 at P 15; *Narragansett*, 185 FERC ¶ 61,004 at P 16).

waiver request is contrary to the Commission's disapproval of capital structure and debt cost adjustments that require "dollar tracing."[34]  DWR adds that the Commission must follow its own precedent, and it is not bound by CPUC decisions.[35]  Finally, DWR asserts that granting waiver would create significant harm for customers through a $27.9 million rate increase in Rate Year 2024 from what they would have paid under the filed rate.[36]

### 2.  **TANC**

20.    TANC argues that PG&E's proposal to exclude securitized debts from its Formula Rate Model is inconsistent with the Commission's precedent recognizing that "all debt is fungible and interrelated," and all capital should be included in the derivation of capital structure.[37]  TANC states that the Commission also prohibits dollar tracing for special purpose and tax-exempt bonds.[38]

21.    TANC explains that the Commission's Uniform System of Accounts permits one possible exclusion from Account 223, and PG&E must otherwise include "the face value of notes payable" and "amount of open book accounts" related to associated companies.[39]  Accordingly, TANC contends that PG&E must also reflect the

---

[34] *Id.* at 11-13 (citing *Kern River Gas Transmission Co.*, Opinion No. 486, 117 FERC ¶ 61,077, at P 195 (2006), *order on reh'g*, Opinion No. 486-A, 123 FERC ¶ 61,056 (2008), *order on reh'g*, Opinion No. 486-B, 126 FERC ¶ 61,034, *reh'g denied*, Opinion No. 486-C, 129 FERC ¶ 61,240 (2009), *order on reh'g*, Opinion No. 486-D, 133 FERC ¶ 61,162 (2010) (*Kern River*); *SFPP, L.P.*, Opinion No. 511, 134 FERC ¶ 61,121, at P 191 (2011), *on reh'g*, Opinion No. 511-A, 137 FERC ¶ 61,220 (2011), *on reh'g*, Opinion No. 511-B, 150 FERC ¶ 61,096 (2015), *vacated in part and remanded on other grounds sub nom. United Airlines, Inc. v. FERC*, 827 F.3d 122 (D.C. Cir. 2016); *Mo. River Energy Servs.*, 130 FERC ¶ 63,014, at PP 99, 111, 137-165 (2010) (stating that "[t]he Commission . . . generally disfavors 'dollar-tracing' in order to link the source of funds used for various corporate purposes.")).

[35] *Id.* at 12 (*Cent. Power & Light Co.*, 98 FERC ¶ 61,069, at n.24 (2002); *Houlton Water Co. v. Me. Pub. Serv. Co.*, 60 FERC ¶ 61,141, at 61,514 (1992) (*Houlton*)).

[36] *Id.* at 13.

[37] TANC Protest at 6-7 (citing *Chehalis Power Generating, L.P.*, 123 FERC ¶ 61,038, at P 170 (2008) (*Chehalis*); *Kern River*, 117 FERC ¶ 61,077 at P 195; *SFPP, L.P.*, 134 FERC ¶ 63,013 at PP 98-104).

[38] *Id.* at 7-8 (citing *SFPP, L.P.*, 134 FERC ¶ 61,121 at PP 191-192).

[39] *Id.* at 8 (citing 18 C.F.R. pt. 101 (2022)).

underwriting fees in Account 181, which are related to the long-term debt in Account 428.

22.     TANC counters PG&E's argument that securitized debt is used to fund non-transmission related activities.  TANC states that pursuant to Commission precedent, the entire cost of debt is part of the cost to serve customers, and wildfire mitigation is not limited to distribution assets.[40]  TANC explains that, despite the temporary nature of the long-term debt, PG&E should include the securitized debt in its calculation because it is part of the cost to serve its customers.

23.     TANC asserts that the CPUC proceeding to provide for a separate fixed recovery mechanism outside of California-jurisdictional rates holds no bearing on Commission policy and precedent.[41]  TANC explains that despite PG&E's fixed capital structure, PG&E's exclusions here would affect the cost of debt, PG&E's annual true-up adjustment, and its TRR.  TANC therefore requests that the Commission deny PG&E's waiver request.[42]

**B.     PG&E Answer**

24.     PG&E argues that the protestors fail to demonstrate that PG&E should not be granted a waiver.  According to PG&E, neither TANC nor DWR take issue with the principle that transmission rates should only reflect costs associated with transmission-related investments and expense.[43]  PG&E further states that it is undisputed that the financings at issue were used to finance capital expenditures used solely for electric distribution facilities, and to pay wildfire liability and damages claims associated with wildfires that occurred in 2017-2018, and DWR and TANC do not assert otherwise.  PG&E states that it is undisputed that these financings were issued pursuant to California law with a clearly defined purpose and scope that was unrelated to transmission, at the

---

[40] *Id.* at 8-9 (citing *SFPP, L.P.*, 134 FERC ¶ 63,013 at PP 98-104; *Account. For Premium, Discount & Expense of Issue, Gains & Losses on Refunding, & Reacquisition of Long-Term Debt, & Interperiod Allocation of Income Taxes*, Order No. 505, 51 FPC 714 (1974), *order on reh'g*, Order No. 505-A, 51 FPC 832 (1974), *order on reh'g*, Order No. 505-B, 59 FPC 591 (1977); and PG&E 2023-2025 Wildfire Mitigation Plan R3 (Sept. 27, 2023), https://www.pge.com/content/dam/pge/docs/outages-andsafety/outage-preparedness-and-support/pge-wmp-r3-092723.pdf

[41] *Id.* at 9 (citing *Houlton Water Co. v. Me. Pub. Serv. Co.*, 60 FERC at 61,515 (1992) (*Houlton*)).

[42] *Id.* at 10.

[43] PG&E Answer at 2.

direction of and subject to advance approval of the CPUC. According to PG&E, DWR and TANC do not argue that these are routine financings or that they are in any way interrelated with transmission investment.[44]

25.    In regard to whether its waiver request is in good faith, PG&E argues that DWR incorrectly claims that PG&E anticipated issuing securitized debt when it entered into the TO20 Settlement Agreement. PG&E explains that, although relevant California legislation (AB 1054 and SB 901) was enacted before the TO20 Settlement Agreement was executed, the CPUC orders authorizing PG&E to issue securitized debt were issued in April, May, and June 2021, after the Commission approved the TO20 Settlement Agreement on December 30, 2020. According to PG&E, it was these post-settlement CPUC orders that authorized PG&E to issue securitized debt and specified the permitted uses for the proceeds of the debt for payment of wildfire claims and investment in distribution facilities related to wildfire mitigation.[45] PG&E concludes that, although it was aware of state legislation that allowed it to seek CPUC approval for certain wildfire-related financings, there was no specific debt to exclude at the time the TO20 Settlement Agreement was finalized. According to PG&E, the details on which debt to exclude came only after the settlement, once the CPUC issued its directives, and PG&E's waiver request is specific to the securitized debt issued pursuant to CPUC orders issued in 2021.[46]

26.    PG&E also takes issue with DWR's claim that PG&E's two filings consolidated with the TO20 rate case proceeding were aimed at addressing anticipated issuance of securitized debt pursuant to AB 1054 and SB 901 while the TO20 Formula Rate was pending in settlement discussions. PG&E explains that these two filings, and the Commission's orders addressing them, all happened *before* the CPUC's 2021 orders and involved a different issue, PG&E's capital structure, not the cost of long-term debt.[47]

27.    PG&E adds that it could not have anticipated exactly how (if at all) the securitized debt would affect the TO20 Formula Rate until the CPUC decisions were issued in 2021. PG&E explains that it could not have anticipated with certainty that the securitized debt would be recorded in FERC Account 223, which captures all debt from an affiliate, because the precise framework of the securitized debt issuance, including the transfer of

---

[44] *Id.* at 2-3.

[45] *Id.* at 4.

[46] *Id.*

[47] *Id.* at 4-5.

the debt to a PG&E affiliate company in exchange for the right to the fixed recovery charge revenues, was not in place until the 2021 CPUC decisions.[48]

28.     Further, PG&E argues that its waiver request is limited in scope because it does not seek to modify the formula rate itself; it simply would exclude certain amounts arising from specific transactions.  Specifically, PG&E challenges DWR's claim that PG&E's waiver request is not limited in scope because it affects a formula rate true-up rather than a forecasted value.  PG&E argues that, contrary to DWR's assertion, the precedent cited in PG&E's waiver request do not stand for the proposition that the Commission will grant only those waiver requests that concern forecasted values.  According to PG&E, in each instance the Commission granted the requested waiver in order to ensure that the rates to be charged to customers accurately reflect costs incurred or expected to be incurred.  PG&E argues that in *Morongo Transmission*, the central reason for granting waiver was to ensure the rates charged to ratepayers accurately reflected the costs incurred or expected to be incurred.[49]

29.     PG&E further states that in *SoCal Edison*, although the waiver request concerned a forecast, the key determining fact in the Commission's granting the waiver was to ensure the forecast reflects rates that are accurate.[50]  PG&E adds that the Commission applied similar reasoning in *Narragansett*, where the waiver was intended to ensure that all appropriate inputs (including costs) were reflected in rates.[51]

30.     Next, PG&E responds to TANC's contention that it is not appropriate to exclude the securitized debt from the cost of debt calculation because PG&E's wildfire mitigation is not limited to distribution assets.  PG&E asserts that the CPUC's order makes clear that

---

[48] *Id.* at 5-6.

[49] *Id.* at 6-7 (citing *Morongo Transmission*, 183 FERC ¶ 61,070 at P 21 (finding that "calculating the 2023 Annual Operating Cost TRR in accordance with Paragraph 7 of Appendix III would require Morongo Transmission to include the one-time start-up costs in its proposed revenue requirement, which would not accurately reflect Morongo Transmission's expected operating costs for 2023.")).

[50] *Id.* at 7 (citing *SoCal Edison*, 173 FERC ¶ 61,128 at P 18 (finding that "the objective of the requested waiver is to enable a more accurate forecast that will provide for more accurate transmission rates.  The waiver will not alter the formula rate's ordinary true up operation or TRR.")).

[51] *Id.* (citing *Narragansett*, 185 FERC ¶ 61,004 at P 10 ("The waiver will address Narragansett's inability to include its costs, revenues, and load in the currently effective Attachment F, due to the timing of the effectiveness of the changes necessary to incorporate Narragansett as a [Participating Transmission Owner].")).

the AB 1054 securitized debt may be used only to fund distribution investments.
According to PG&E, the mere fact that PG&E's Wildfire Mitigation Plan contains
discussion of transmission-related improvements does not change the CPUC's directives
on how the securitized debt is to be used, i.e., for investment in distribution-related
facilities.[52]

31.    PG&E argues that contrary to the protestors' assertion, the waiver request does not
require the Commission to engage in any "dollar tracing" because the CPUC has made
clear that the AB 1054 and SB 901 securitized debt is intended for distribution-level
investments and payment of wildfire liability and damages claims only.  PG&E also
contends that the precedent TANC and DWR cite is inapposite.  According to PG&E, in
*Chehalis*, the rate at issue was for reactive power service Chehalis Power Generating,
L.P. provided, and, in this context, the Commission found it inappropriate to have a
different cost of debt calculation for different components of a company's operations.[53]
PG&E argues that such rationale does not fit here, where PG&E simply seeks to exclude
from its Formula Rate certain debt that has nothing to do with transmission service.

32.    PG&E also takes issue with DWR and TANC's reliance on *Kern River* and argues
that "dollar tracing" is not only inappropriate but impossible.  According to PG&E,
unlike *Kern River*, the issue is not how to calculate the cost of debt but rather that certain
debt is not related to providing transmission services.[54]  PG&E explains that the debt at
issue is not interrelated with other PG&E financings used to fund its transmission rate
base, instead, it was used for specific, designated, non-rate base reasons such as paying
wildfire claims.

33.    PG&E also distinguishes the circumstances in the instant proceedings from *SFPP*
cited by TANC to support its argument regarding debt being fungible and interrelated.[55]
PG&E explains that, in *SFPP*, the Commission determined that the two debt classes were
"interrelated", and the evidence demonstrated that customer proceeds from the utility's
operations could be used to make debt payments.  Here, according to PG&E,
transmission customers are not paying any of the debt costs at issue; rather, all of these
costs are recovered through CPUC-jurisdictional rates.  PG&E adds that unlike in *SFPP*,
the financings have been specifically segregated from other PG&E activities and are

---

[52] *Id.*

[53] *Id.* at 8 (citing *Chehalis*, 123 FERC ¶ 61,038 at P 170).

[54] *Id.* at 9 (citing *Kern River*, 117 FERC ¶ 61,077 at P 179).

[55] *Id.* (citing *SFPP, L.P.*, 134 FERC ¶ 63,013 at PP 98-104).

being used for very specific and distinct purposes and are not interrelated with other PG&E debt issuances.[56]

34.     PG&E further states that, contrary to the protestors' assertion, it has not asked the Commission to set aside its jurisdiction or to concede that it lacks jurisdiction. PG&E explains that it has requested that the Commission recognize a valid pronouncement by a state regulator, which it routinely does in many contexts.[57] PG&E adds that these decisions provide critical background regarding the purpose of the financings and are instructive as to how the CPUC has addressed the consideration of these financings.

35.     Finally, PG&E argues that DWR's assertion that the waiver request will harm customers through an increased revenue requirement ignores that charging an inaccurate rate is an undesirable consequence. PG&E explains that the adjustments it proposes go both ways, some increasing the revenue requirement (securitized debt) and some decreasing it (underwriting fees). According to PG&E, the Commission should not deny a waiver request simply because it may increase the TRR. Rather, PG&E states that the Commission should examine the merits to determine whether a waiver request is appropriate. PG&E reiterates that ensuring the rates reflect the true cost of service avoids the undesirable consequence of inaccurate rates and does not harm any person; it simply ensures the appropriate application of cost causation principles foundational to utility ratemaking.[58]

## IV.    Discussion

### A.    Procedural Matters

36.     Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214 (2022), the notice of intervention and timely, unopposed motions to intervene serve to make the entities that filed them parties to this proceeding.

37.     Rule 213(a)(2) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.213(a)(2) (2022), prohibits an answer to a protest unless otherwise

---

[56] *Id.* at 9-10.

[57] *Id.* at 10 (citing *Cal. Indep. Sys. Operator Corp.*, 182 FERC ¶ 61,067, at P 26 (2023) (accepting proposed tariff revisions that would allow certain resources to reflect in their default energy bids the costs of state-mandated greenhouse gas compliance associated with a state cap-and-invest program); *Cal. Indep. Sys. Operator Corp.*, 116 FERC ¶ 61,274, at P 1117 (2006) ("[W]e can, in appropriate circumstances, defer to state and Local Regulatory Authorities to set [resource adequacy] requirements.")).

[58] *Id.* at 11.

ordered by the decisional authority.  We accept PG&E's answer because it has provided information that assisted us in our decision-making process.

### B.   Substantive Matters

38.   As discussed below, we deny PG&E's request for waiver of the TO20 Formula Rate and TO20 Formula Rate Protocols to allow PG&E to exclude certain cost inputs to the cost of long-term debt for rate years 2024 and 2025.  The Commission has granted waiver of tariff provisions where:  (1) the applicant acted in good faith; (2) the waiver is of limited scope; (3) the waiver addresses a concrete problem; and (4) the waiver does not have undesirable consequences, such as harming third parties.[59]  We find that the circumstances of PG&E's waiver request do not satisfy these criteria.

39.   First, we find that PG&E's waiver request does not address a concrete problem.  PG&E argues that a concrete problem exists because inclusion of securitized debt and the associated amortization in the cost of long-term debt as required by its existing Formula Rate Model conflicts with PG&E's commitment to the CPUC to exclude these components from rates.  PG&E claims that excluding securitized debt would more accurately reflect the costs to serve its customers.  We disagree.  We find that PG&E should include the securitized debt in its calculation of long-term debt because it is part of the cost to serve its customers.  We are unpersuaded by PG&E's argument that the requirement to include securitized debt in its calculation of long-term debt conflicts with its CPUC commitments.  The Commission's authority to decide issues concerning a company's wholesale rates is not constrained by the jurisdiction of state commissions over that company's retail rates.[60]  Further, the TO20 Settlement Agreement resolved the treatment of PG&E's securitized debt.  In section 4.4 of the TO20 Settlement Agreement, PG&E agreed to a fixed capital structure where long-term debt was 49.75%, and in section 4.7, PG&E agreed to calculate the cost of long-term debt using the long-term debt and interest costs shown in the FERC Form 1.[61]  We also find that PG&E's reliance on *Morongo Transmission* is misplaced.  In that order, the Commission granted a waiver to resolve a concrete problem of over-recovery from ratepayers.[62]  Here, unlike in *Morongo Transmission*, granting PG&E's request to exclude the securitized debt and the

---

[59] *See, e.g.*, *Citizens Sunrise Transmission LLC*, 171 FERC ¶ 61,106, at P 10 (2020); *Midcontinent Indep. Sys. Operator, Inc.*, 154 FERC ¶ 61,059, at P 13 (2016).

[60] *Houlton*, 60 FERC at 61,514-15.

[61] PG&E's Offer of Settlement and Stipulation §§ 4.4, 4.7, Docket No. ER19-13-003 (filed Oct. 15, 2020).

[62] *Morongo Transmission*, 183 FERC ¶ 61,070 at PP 9, 23.

Document Accession #: 20231222-3044     Filed Date: 12/22/2023

associated amortization from the calculation of long-term debt will result in misrepresentation of the costs of serving customers.

40.     Second, we find that PG&E has not demonstrated that the requested waiver will not have undesirable consequences, such as harm to third parties.  PG&E argues that its waiver request will not harm third parties and that a "grossly inaccurate" revenue requirement would result in undesirable consequences.[63]  However, as explained above, excluding the securitized debt and the associated amortization from the calculation of long-term debt will result in an inaccurate reflection of the cost of long-term debt and a misrepresentation of the costs of serving customers.  Accordingly, we disagree with PG&E's assertion that the requested waiver will not have undesirable consequences.

The Commission orders:

    PG&E's waiver request is hereby denied, as discussed in the body of this order.

By the Commission.  Commissioner Danly is not participating.

( S E A L )

                            Debbie-Anne A. Reese,
                            Deputy Secretary.

---

[63] Waiver Request at 21-23.

Document Accession #: 20231222-3044      Filed Date: 12/22/2023

Document Content(s)

ER24-219-000.docx.......................................................1

# EXHIBIT B

186 FERC ¶ 62,080
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Pacific Gas and Electric Company                    Docket No. ER24-219-001

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND
PROVIDING FOR FURTHER CONSIDERATION

(February 22, 2024)

Rehearing has been timely requested of the Commission's order issued on December 22, 2023, in this proceeding. *Pac. Gas & Elec. Co.,* 185 FERC ¶ 61,219 (2023). In the absence of Commission action on a request for rehearing within 30 days from the date it is filed, the request for rehearing may be deemed to have been denied. 16 U.S.C. § 825*l*(a); 18 C.F.R. § 385.713 (2023); *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc).

As provided in 16 U.S.C. § 825*l*(a), the request for rehearing of the above-cited order filed in this proceeding will be addressed in a future order to be issued consistent with the requirements of such section. As also provided in 16 U.S.C. § 825*l*(a), the Commission may modify or set aside its above-cited order, in whole or in part, in such manner as it shall deem proper.

Debbie-Anne A. Reese,
Acting Secretary.

Document Accession #: 20240222-3028    Filed Date: 02/22/2024

Document Content(s)

ER24-219-001.docx.......................................................1

**FERC** Online - Web Applications of the Federal Energy Regulatory Commission



| | FERC Online Home |
| About FERC Online |
| | Log Out |
| Edit Registration |
| Company Registration |
| | eFiling |
| | eSubscription |
| | eComment |
| | Query Mailing List/Recipients by State |
| | Query Service List |
| | My Service List |
| | My Filing List |
| | eLibrary |
| eTariff Viewer |
| Help |

Service List for ER24-219-000 Pacific Gas and Electric Company

Contacts marked ** must be postal served

| Party | Primary Person or Counsel of Record to be Served | Other Contact to be Served |
|---|---|---|
| California Department of Water Resources State Water Project | | Amanda C. Drennen<br>Attorney<br>Spiegel & McDiarmid LLP<br>1875 Eye Street NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20...<br>amanda.drennen@spiegelmcd.com |
| California Department of Water Resources State Water Project | | Samuel B Whillans<br>Attorney<br>Spiegel & McDiarmid LLP<br>1875 EYE ST NW STE 700<br>WASHINGTON, DISTRICT OF COLUMBIA...<br>samuel.whillans@spiegelmcd.com |
| California Department of Water Resources State Water Project | | E Service<br>Spiegel & McDiarmid LLP<br>1875 Eye St, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20...<br>eService@spiegelmcd.com |
| California Department of Water Resources State Water Project | | Masoud Shafa<br>California Department of Water Resourc...<br>PO Box 942836<br>Sacramento, 94236<br>Masoud.Shafa@water.ca.gov |
| California Department of Water Resources State Water Project | | Trong D Bui<br>Senior Hydroelectric Power Uti<br>2135 Butano Dr., Suite 100<br>Sacramento, CALIFORNIA 95825<br>Trong.Bui@water.ca.gov |
| California Department of Water Resources State Water Project | | Matthew J Goldman<br>Deputy Attorney General<br>California Department of Justice<br>1300 I Street<br>Sacramento, CALIFORNIA 95814<br>matthew.goldman@doj.ca.gov |
| California Department of Water Resources State Water Project | | Robert S Hedrick<br>715 P ST FL 7<br>SACRAMENTO, CALIFORNIA 95814<br>Robert.Hedrick@water.ca.gov |
| City of Santa Clara, California | Lisa Gast<br>Attorney<br>Duncan, Weinberg, Genzer & Pembroke PC<br>1667 K ST NW STE 700<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>lsg@dwgp.com | Linda L. Murray-Kimball<br>Legal Assistant<br>Duncan, Weinberg, Genzer & Pembroke...<br>1667 K Street, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20...<br>lmk@dwgp.com |
| City of Santa Clara, California | Peter Scanlon<br>Partner<br>Duncan, Weinberg, Genzer & Pembroke PC<br>1667 K ST NW STE 700<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>pjs@dwgp.com | Manuel Pineda<br>MPineda@SantaClaraCA.gov |
| CPUC | Pouneh Ghaffarian<br>Staff Attorney<br>California Public Utilities Commission<br>505 Van Ness Ave.<br>San Francisco, CALIFORNIA 94102<br>UNITED STATES<br>pouneh.ghaffarian@cpuc.ca.gov | Philip Voris<br>Regulatory Analyst<br>505 VAN NESS AVE<br>SAN FRANCISCO, CALIFORNIA 94102<br>philip.voris@cpuc.ca.gov |

| | | |
|---|---|---|
| Modesto Irrigation District | Sean Neal<br>Attorney<br>Duncan, Weinberg, Genzer & Pembroke PC<br>915 L ST STE 1410<br>SACRAMENTO, CALIFORNIA 95814<br>UNITED STATES<br>smn@dwgp.com | Linda L. Murray Omeall<br>Legal Assistant<br>Duncan, Weinberg, Genzer & Pembroke<br>1667 K Street, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 20<br>lmk@dwgp.com |
| Modesto Irrigation District | Lauren Perkins<br>Duncan Weinberg Genzer Pembrok<br>Duncan Weinberg Genzer & Pembroke, PC<br>915 L ST STE 1410<br>SACRAMENTO, CALIFORNIA 95814<br>UNITED STATES<br>lmp@dwgp.com | Martin Caballero<br>Modesto Irrigation District<br>P.O. Box 4060<br>Modesto, CALIFORNIA 95352<br>martin.caballero@mid.org |
| Northern California Power Agency | Michael Postar<br>Attorney<br>Duncan, Weinberg, Genzer & Pembroke PC<br>1667 K Street, N.W., Suite 700<br>Duncan Weinberg Genzer & Pembroke<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>mrp@dwgp.com | Julie L Smith<br>Legal Assistant<br>Duncan, Weinberg, Genzer & Pembroke,<br>1667 K Street, N.W., Suite 700<br>Washington, DISTRICT OF COLUMBIA 20<br>JLS@dwgp.com |
| Northern California Power Agency | Sylwia Dakowicz<br>Duncan Weinberg Genzer & Pembroke, PC<br>1036 Vanderbilt Way<br>Sacramento, CALIFORNIA 95825<br>UNITED STATES<br>sd@dwgp.com | Randy Howard<br>Northern California Power Agency<br>651 Commerce Drive<br>Roseville, CALIFORNIA 95678<br>Randy.Howard@ncpa.com |
| Pacific Gas and Electric Company | Suedeen Kelly<br>Jenner & Block LLP<br>1099 New York Ave, NW<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>SKelly@jenner.com | TaeHyung Kim<br>Associate Attorney<br>Jenner & Block LLP<br>1155 AVENUE OF THE AMERICAS<br>NEW YORK, NEW YORK 10036<br>tkim@jenner.com |
| Six Cities CA | Rebecca Shelton<br>Thompson Coburn LLP<br>1909 K Street, N.W., Suite 600<br>Washington, DISTRICT OF COLUMBIA 20006-1167<br>UNITED STATES<br>rshelton@thompsoncoburn.com | Margaret Elizabeth McNaul<br>Attorney<br>Thompson Coburn LLP<br>1909 K Street, N.W.<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20<br>mmcnaul@thompsoncoburn.com |
| Six Cities CA | | Joshua E. Adrian<br>Thompson Coburn LLP<br>1909 K ST NW STE 600<br>WASHINGTON, DISTRICT OF COLUMBIA<br>jadrian@thompsoncoburn.com |
| Six Cities CA | | Jenna Cliatt<br>Thompson Coburn LLP<br>1909 K St NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20<br>jcliatt@thompsoncoburn.com |
| Six Cities CA | | Carrie A Thompson<br>Principal Integrated Resources<br>City of Anaheim, California<br>201 S ANAHEIM BLVD STE 802<br>ANAHEIM, CALIFORNIA 92805<br>cathompson@anaheim.net |
| Six Cities CA | | Nicholas T Burki<br>Integrated Resources Planner I<br>ANAHEIM PUBLIC UTILITIES<br>201 S. Anaheim Blvd.<br>Suite 802<br>Anaheim, CALIFORNIA 92805<br>Nburki@anaheim.net |
| Six Cities CA | | Richard Torres<br>729 N. Azusa Ave<br>Azusa, CALIFORNIA 91702<br>rtorres@azusaca.gov |
| Six Cities CA | | Thomas (Tom) A. Miller<br>tmiller@ci.banning.ca.us |
| Six Cities CA | | Scott D Harding<br>Asst Director of Utility Opera<br>City of Colton, CA |

| | | |
|---|---|---|
| | | 25024 La Cadena Dr, Colton, CA 92324<br>Colton, CALIFORNIA 92324<br>sharding@coltonca.gov |
| Six Cities CA | | Kelly K Nguyen<br>Assistant General Manager, Pow<br>City of Pasadena Water and Power Depa<br>100 N. Garfield Avenue<br>PASADENA, CALIFORNIA 91101<br>kellynguyen@cityofpasadena.net |
| Six Cities CA | | Marvin Moon<br>AGM Power Delivery<br>!00 N. Garfield Avenue<br>PASADENA, CALIFORNIA 91101<br>mmoon@cityofpasadena.net |
| Six Cities CA | | Susan D Wilson<br>Assistant City Attorney<br>City of Riverside, California<br>3900 Main Street<br>Riverside, CALIFORNIA 92522<br>swilson@riversideca.gov |
| Six Cities CA | | Neng Xu<br>Utility Principal Resource Anl<br>CITY OF RIVERSIDE PUBLIC UTIL DEPT<br>3435 14th Street<br>Riverside, CALIFORNIA 92501<br>nxu@riversideca.gov |
| Six Cities CA | | Cindi R Cohen<br>Utility Principal Resource Ana<br>CITY OF RIVERSIDE PUBLIC UTIL DEPT<br>3435 14th Street<br>Riverside, CALIFORNIA 92501<br>ccohen@riversideca.gov |
| State Water Contractors | Bhaveeta Mody<br>Duncan, Weinberg, Genzer & Pembroke PC<br>1667 K ST NW STE 700<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>bkm@dwgp.com | Linda L. Murray-Kimball<br>Legal Assistant<br>Duncan, Weinberg, Genzer & Pembroke<br>1667 K Street, NW<br>Suite 700<br>Washington, DISTRICT OF COLUMBIA 2(<br>lmk@dwgp.com |
| State Water Contractors | Sean Neal<br>Attorney<br>Duncan, Weinberg, Genzer & Pembroke PC<br>915 L ST STE 1410<br>SACRAMENTO, CALIFORNIA 95814<br>UNITED STATES<br>smn@dwgp.com | Jonathan Young<br>1121 L ST STE 1050<br>SACRAMENTO, CALIFORNIA 95814<br>jyoung@swc.org |
| State Water Contractors | Sylwia Dakowicz<br>Duncan Weinberg Genzer & Pembroke, PC<br>1036 Vanderbilt Way<br>Sacramento, CALIFORNIA 95825<br>UNITED STATES<br>sd@dwgp.com | |
| Transmission Agency of Northern California | Michael Postar<br>Attorney<br>Duncan, Weinberg, Genzer & Pembroke PC<br>1667 K Street, N.W., Suite 700<br>Duncan Weinberg Genzer & Pembroke<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>mrp@dwgp.com | Julie L Smith<br>Legal Assistant<br>Duncan, Weinberg, Genzer & Pembroke,<br>1667 K Street, N.W., Suite 700<br>Washington, DISTRICT OF COLUMBIA 2(<br>JLS@dwgp.com |
| Transmission Agency of Northern California | Bhaveeta Mody<br>Duncan, Weinberg, Genzer & Pembroke PC<br>1667 K ST NW STE 700<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>bkm@dwgp.com | David Cohen<br>CEO<br>2855 SW SCENIC DR<br>PORTLAND, OREGON 97225<br>dbcohen13@gmail.com |
| Transmission Agency of Northern California | Sylwia Dakowicz<br>Duncan Weinberg Genzer & Pembroke, PC<br>1036 Vanderbilt Way<br>Sacramento, CALIFORNIA 95825<br>UNITED STATES<br>sd@dwgp.com | |

Back to Query Service List    Back to FERCOnline

Title 18, U.S.C. 1001 makes it a crime for any person knowingly and willingly to make to any Agency or Department of the United States fictitious or fraudulent statements as to any matter within its jurisdiction.

FERC Online does not require the submission of personally identifiable information (PII) (e.g. social security numbers, birthdates, and phone num
FERC will not be responsible for any PII submitted to FERC Online, including any accidental or inadvertent submissions of PII.

This site contains information collections that are subject to the Paperwork Reduction Act (PRA). Among other things, the PRA requires FERC to p
with an estimate of the average burden of completing the information collections on this site. Comments regarding the burden estimate or any othe
these forms can be directed to FERC's Information Collection Branch at DataClearance@ferc.gov.

In addition, you are not required to respond to any collection of information unless it displays a currently valid Office of Management and Budget (
number. FERC provides the OMB Control Numbers of the information collections on this site at www.ferc.gov/information-collections.

For any issues regarding FERC Online, please contact FERC Online Support or call Local: 202-502-6652 | Toll-free: 866-208-3676. Please include a c
address, telephone number, and e-mail address.